UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SERVICE STEEL WAREHOUSE CO., L.P. | CIVIL ACTION |
| VERSUS | NO. 14-1416 |
| MCDONNEL GROUP, LLC, ARCHER WESTERN CONTRACTORS, LLC, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, AND LIBERTY MUTUAL INSURANCE COMPANY. | SECTION "L" (5) |

## ORDER AND REASONS

Before the Court are Service Steel Warehouse Company, L.P.'s ("Service Steel") and defendants' cross-motions for partial summary judgment regarding Service Steel's entitlement to recover 18% interest and attorneys' fees on the bond issued by defendants, Travelers Casualty and Surety Company of America ("Travelers") and Liberty Mutual Insurance Company ("Liberty Mutual"), based on Service Steel's contract with H&H Steel Fabricators, Inc. ("H&H"). R. Docs. 27 and 33, respectively. After reviewing the parties' memoranda, the record and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** defendants' motion and **GRANTS IN PART AND DENIES IN PART** Service Steel's motion.

   I.   Background

Defendants, The McDonnel Group, LLC and Archer Western Contractors, LLC ("MD/AW"), formed a joint venture and entered into a contract with The Law Enforcement District of the Parish of Orleans ("Law Enforcement District") to build the Intake Processing Center/Templeman III & IV Replacement/Administrative Buildings in New Orleans, Louisiana. R. Doc. 1. On July 28, 2011, MD/AW obtained a Labor and Material Payment Bond underwritten

2

by defendants, Travelers and Liberty Mutual, in the amount of $144,929,000.00, pursuant to the Louisiana Public Works Act ("LPWA"), La. Rev. Stat. § 38:2241, *et seq. Id.* MD/AW was the principal on the bond. R. Doc. 27-2. The bond provided, in pertinent part:

> I]f Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void, otherwise it shall remain in full force and effect, subject, however, to the following conditions:
>
> \* \* \*
>
> 2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sums as may be justly due claimant, and have execution thereon. The owner shall not be liable for the payment of any costs or expenses of such suit.

*Id.*

H&H was a steel fabrication subcontractor on the Law Enforcement District project. *Id.* H&H obtained some of its steel from Service Steel. R. Doc. 1. Years prior to working on the Law Enforcement District project, in 2007, H&H and Service Steel entered into a credit agreement in which H&H agreed that all past due amounts would bear simple interest at a rate of 1.5% per month (18% per year), and that it would pay Service Steel's reasonable attorneys' fees incurred for collection. R. Doc. 27-1.

In July 2012, Service Steel was informed that MD/AW required H&H to order a large amount of steel for the project. *Id.* Service Steel informed MD/AW that it was concerned about being paid for the materials. *Id.* As a result, on July 26, 2012, MD/AW had Travelers and Liberty Mutual execute a rider to the Payment Bond specifically recognizing Service Steel as a claimant under that bond. *Id.* Service Steel then delivered the steel, but H&H failed to pay service.

On June 18, 2014, Service Steel filed this action against MD/AW, Travelers and Liberty Mutual alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332, and claiming that it was not fully paid for the materials it provided to H&H for use on the Law Enforcement District project. R. Doc. 1. Service Steel claims that it is owed $798,250.68, plus 18% interest and attorneys' fees. *Id.* Service Steel alleged a claim under the LPWA, and also claims for contractual bond, detrimental reliance and breach of contract.[1] *Id.* In its amended complaint, Service Steel seeks penalties against Travelers and Liberty Mutual under La. Rev. Stats. §§ 22:1973 and 22:1892. R. Doc. 19.

On October 6, 2015, Service Steel filed a motion for partial summary judgment arguing that it is entitled to recover on the bond 18% interest and "reasonable attorneys' fees" incurred in collection by virtue of its credit agreement with H&H. R. Doc. 27; *see also* R. Doc. 27-2 at 15. Service Steel also argues that the interest and attorneys' fees were part of its agreement with H&H because those terms and conditions were included on the back of the customer copy of the sales package that Service Steel submitted to H&H when the material was ordered and on the invoices that Service Steel submitted to H&H. R. Doc. 27-1.; *see also* R. Doc. 27-2 at 15 (providing for interest and "reasonable attorneys' fees" between Service Steel and H&H in the event of an H&H

---

[1] Service Steel filed a motion to voluntarily dismiss with prejudice its claims brought under the LPWA. R. Doc. 44. The court granted the motion, and such claims were dismissed with prejudice. R. Doc. 45.

breach).  The bond states that when a claimant is not "paid in full" for labor performed or materials provided, it may sue on the bond and "prosecute the suit to final judgment for such sum or sums as may be justly due" to it. *Id.* Service Steel argues that in order for it to be "paid in full" and receive "sums as may be justly due" to it, its credit agreement with H&H must be read into the bond permitting Service Steel to recover the interest and attorneys' fees claimed. *Id.*

Defendants, in opposition to Service Steel's motion and in their own cross-motion for partial summary judgment, argue that the 18% interest and attorneys' fees provisions of Service Steel's credit agreement with H&H are not "sums as may be justly due" to Service Steel under the bond because those are not obligations of the bond's principal, MD/AW.  R. Docs. 33-1 and 37. Defendants argue that because the contractual interest and attorneys' fees are not part of MD/AW's principal obligation under the bond, Service Steel cannot recover those claims from Travelers and Liberty Mutual under the bond, which was issued pursuant to the LPWA. R. Doc. 33-1.  Further, defendants argue that it is disputed whether the interest and attorneys' fees provisions are part of Service Steel's contract with H&H.  *Id.*

## II. Law & Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when the record before a court supports the conclusion that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party

meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *See id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).  "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50.  In ruling on a summary judgment motion, however, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).  Furthermore, a court must assess the evidence and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

### B.  Principles of Louisiana Contract Interpretation

Because this case arises under this Court's diversity subject-matter jurisdiction, the Court applies the substantive law, including the conflict-of-law rules, of the forum state, Louisiana.  *Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007) (citing *Spence v. Glock*, 227 F.3d 308, 311 (5th Cir. 2000)).  The bond states that the general contract between MD/AW and the Law Enforcement District is incorporated into the bond by reference.  The general contract contains a choice-of-law provision specifying that Louisiana law applies to disputes involving the contract. Thus, Louisiana law applies to disputes involving the bond as well.  When the "parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or public policy considerations justifying the refusal to honor the contract as written."  *Barnett v. Am.*

*Constr. Hoist, Inc.*, 2011-1261, p. 5-6 (La. App. 1 Cir. 2/10/12); 91 So.3d 345, 349 (citations omitted). Contractual choice-of-law provisions are presumed valid until proved invalid. *Id.* No party has argued that the choice-of-law provision is invalid. Indeed, Service Steel and defendants all argue for the application of Louisiana law. Therefore, the Court will apply Louisiana substantive law.

Under Louisiana law, suretyship is defined as "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. Civ. Code art. 3035. Suretyship contracts "must be express and in writing" and "may be qualified, conditioned, or limited in any lawful manner." *Id.* at arts. 3038 & 3040. A surety is liable to the creditor "for the full performance of the obligation of the principal obligor. . ." *Id.* at art. 3045.

The same rules for interpreting contract in general apply to suretyship contracts. *Wooley v. Lucksinger*, 2006-1140, p. 7 (La. App. 1 Cir. 12/30/08); 7 So.3d 660, 664 (citing *Ferrell v. S. Cent. Bell Tel. Co.,* 403 So.2d 698, 700 (La. 1981); *Exlipse Telecomm. Inc. v. Telnet Intern. Corp.*, 2001-0271, p. 4 (La. App. 5 Cir. 10/17/01); 800 So.2d 1009, 1011). In *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, the Supreme Court of Louisiana explained the law applicable to contract interpretation:

> Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract

> into harmony with a supposed reasonable intention of the parties. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

2012-2055, p. 5-6 (La. 3/19/13); 112 So.3d 187, 192 (citations and quotations omitted).

However, if the "written expression of the common intention of the parties is ambiguous" parol or extrinsic evidence is admissible to interpret the contract. *Campbell v. Melton*, 2001-2578, p. 6 (La. 5/14/02); 817 So.2d 69, 75 (citing *Ortego v. State, Through the Dep't of Transp. & Dev.*, 96-1322 (La. 2/25/97); 689 So.2d 1358). "A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Id.* (citations omitted). Ambiguous contractual terms are construed against the drafter of the contract. *Id.*

### C. Analysis of Ambiguity

#### i.   The Text of the Bond

The Court finds that the language "sums as may be justly due claimant" is ambiguous[1] on its face, and the traditional textual canons of statutory interpretation fail to clarify MD/AW's

---

[1] The Court notes that the ambiguous language, "sum or sums as may be justly due," would be considered vague as opposed to ambiguous in the eyes of the most scrutinizing students of textual interpretation. The word "ambiguous" is generally used to indicate that a given word or phrase has multiple interpretations, whereas the word "vague" usually indicates that a word or phrase is too indeterminate to be interpreted in all cases. However, the Louisiana precedent before the Court broadly defines ambiguity, and the Court adopts that terminology in turn. *Campbell v. Melton*, 2001-2578, p. 6 (La. 5/14/02); 817 So.2d 69, 75 (citing *Ortego v. State, Through the Dep't of Transp. & Dev.*, 96-1322 (La. 2/25/97); 689 So.2d 1358).

7

obligation to Service Steel.  R. Doc. 33-2 at 2.  Louisiana law instructs courts to conduct two inquiries before using textual canons or evaluating the parties' intent: (1) determine whether words in a contract are clear and explicit; and (2) evaluate the absurdity of any plausible reading.  *Clovelly Oil*, 2012-2055 at 5.  The language "sum or sums as may be justly due to claimants," R. Doc. 33-2 at 2, is too general for the Court to hold that recovery for claimants such as Service Steel is "clear[ly] and explicit[ly]" limited to labor and materials alone.  *Clovelly Oil*, 2012-2055 at 5..  The broader reading of the language at issue called for by Service Steel is also not absurd.  If MD/AW promptly makes payment of "labor and materials," interest and attorney's fees are likely to be minimal.  R. Doc. 33-2 at 2.  However, if MD/AW initially denies payment and a claimant must file suit, the claimant may be "justly due" the extensive attorney's fees and interest which accrued during the litigation.  R. Doc. 33-2 at 2.  The Court must therefore accept Service Steel's interpretation as a plausible interpretation of the bond's provisions, and look to other canons of interpretation as well as the parties' contractual intent for clarification.

Louisiana law instructs courts to look to the "plain and popular meaning" of language in a contract when evaluating common intent.  *Id.*  This command aligns with federal law, where the most basic "canon of contractual interpretation [instructs] . . . that words and phrases in a contract [are] to be given their plain meanings, unless the document demonstrates that the parties intended for the terms to be employed in some special or technical sense." *Cleere Drilling Co. v. Dominion Exploration & Production, Inc.*, 351 F.3d 642, 650–51 (5th Cir. 2003).  There is no settled plain meaning which defines "sum or sums as may be justly due."  The bond's text is therefore ambiguous under Louisiana law, *Campbell*,  2001-2578 at 6, and further inquiry into the intent of the parties is appropriate.  *See Cleere Drilling*, 351 F.3d at 650–51.

8

Contractual intent may be discerned by looking to the context of a contract as a whole. *Clovelly Oil*, 2012-2055 at 6; *cf. Marlow, L.L.C. v. BellSouth Telecommunications, Inc.*, 686 F.3d 303, 309 (5th Cir. 2012) ("[The whole-act rule] provides that one section of an enactment is analyzed in light of the whole . . . ."). As the principal, MD/AW agreed to "promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the contract." R. Doc. 32-2 at 2. This language is limited in scope, and does not include attorney's fees or interest. However, in the event that MD/AW did not promptly pay claimants, claimants who were not "paid in full" obtained the right to sue MD/AW and "prosecute the suit to final judgment for such sum or sums as may justly be due claimant." R. Doc. 32-2 at 2. Thus, MD/AW is obliged to pay for labor and material, but this obligation is itself "*subject . . . to the following condition*[]" that MD/AW assume liability for "sum or sums as may be justly due" each claimant who was not "paid in full." R. Doc. 32-2 at 2 (emphasis added). The language "subject to" indicates that the latter, broader obligation is dominant. R. Doc. 32-2 at 2. MD/AW's principal, limited obligation to pay for labor and material is therefore superseded by the more general obligation to pay "sums as may be justly due." R. Doc. 32-2 at 2. Defendants' contentions that the obligation to pay for "labor and material used or reasonably required" controls the interpretation of "sum or sums as may be justly due" fail when viewed in this light. If the drafters of the bond intended to qualify the "sum or sums as may be justly due" language, they could have done so at the time of contracting. R. Doc. 32-2 at 2. In which case, the sentence would have read: "Sums as may be justly due for labor and materials." But the drafters instead chose to retain a contractual ambiguity.

Further, because the bond includes two different forms of compensatory language, the text of the bond suggests that "labor and material" is distinct from "sum or sums as may be justly due

9

each claimant" after suit is filed. R. Doc. 32-2 at 2. When a party varies its language in a contract, courts interpreting the contract presume that the use of different terms signifies a different meaning. *See* Jacob Scott, *Codified Canons and the Common Law of Interpretation*, 98 Geo. L.J. 341, 368 (2010) (describing the canon of consistent usage and its converse, the canon of meaningful variation). The use of "sum or sums as may be justly due" after filing suit is a meaningful variation from "labor or material used or reasonably required for use," and suggests a change in the scope of MD/AW's liability under the bond once suit is filed. R. Doc. 32-2 at 2.

After following Louisiana's stated principles of contractual interpretation and employing all pertinent canons of textual interpretation within the four corners of the bond, the language at issue remains, at best, ambiguous. Defendants drafted the bond, and chose not to qualify "sums as may be justly due claimant[s]" with language restricting the "sums" to costs for labor and materials. R. Doc. 32-2 at 2. The Court is therefore unable to determine whether MD/AW intended to include a restriction to labor and materials *sub silentio,* or if MD/AW instead intended to compensate claimants to the extent of the recovery allowed by the statute which controls the bond, the LPWA. La. Rev. Stat. § 38:2241. The default rule in Louisiana is to construe ambiguities against the drafter of the contract. *Clovelly Oil*, 2012-2055 at 6. However, before employing this textual tie-breaker, the Court finds it appropriate to look to the LPWA for insight as to the common intent of the parties. *See Campbell*, 2001-2578 at 6.

    ii.    Contractual Intent and the LPWA

The bond in this case was issued pursuant to the LPWA, and the LPWA has the capacity to render clauses in a public works bond ineffective. The Court therefore finds the LPWA pertinent to Louisiana's guidelines for evaluating the common intent of the parties.[2] *See id.* ("[A] contract

---

[2] In contrast, the provisions of the contract between Service Steel and H&H are irrelevant to interpreting the bond. While the rider added Service Steel as a claimant on the bond, the rider did not modify the obligations of the

provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective.").

The LPWA provides that bonds issued pursuant to the LPWA are statutory bonds, and:

> The payment provisions of all bonds furnished for public work contracts described in [the LPWA], regardless of content, shall be construed as and deemed statutory bond provisions. Any such bond which fails to contain any of the requirements set forth in [the LPWA] shall be deemed to incorporate all of the requirements set forth in this Section. Language in any such bond containing any obligations beyond the requirements set forth in this Part shall be deeded surplusage and read out of such bond. Sureties and contractors executing payment bonds for public works contracts under this Part shall be immune from liability for or payment of any claims not required by the [LPWA].

La. Rev. Stat. § 38:2241(C). "The Public Works Act is to be strictly construed and the liability of the surety should not be expanded beyond the statute." *Pierce Foundations, Inc. v. Jaroy Const., Inc.*, 14-669, 6 (La. App. 5 Cir. 3/25/15), 169 So. 3d 580, 584 (La. Ct. App.) *writ granted*, 2015-0785 (La. 6/5/15), 171 So. 3d 938 (citations omitted). When the bond was issued, the sureties, principal, and owner anticipated that the bond would be interpreted under Louisiana law, particularly the LPWA pursuant to which the bond was issued.[3] The parties would logically avoid including provisions which would be "deeded surplusage," *id.*, and stricken from the bond. *See Clovelly Oil*, 2012-2055 at 6 ("[A] contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective."); *see also Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 81 (1998) (applying the canon of construction *ut res magis valeat quam pereat*: "an agreement should be interpreted in such fashion as to preserve, rather than destroy, its validity").

---

bond as they were bargained for at the time of contracting. R. Doc. 27-2 at 19. Therefore, outside the four corners of the bond, the LPWA is the only relevant document to the intent of the original parties to the bond.

[3] The LPWA does not control Service Steel's claim against H&H, because Service steel is a supplier to a supplier, and therefore is not a "claimant" within the scope of the LPWA. *See* La. Rev. Stat. § 38:2242(A).

11

Attorney's fees are cognizable under the LPWA, but they are expressly limited by the statute's terms. Section 38:2246(A) provides in part that "any claimant recovering the full amount of his timely and properly recorded or sworn claim, whether by concursus proceeding or separate suit, shall be allowed ten percent attorney's fees which shall be taxed in the judgment on the amount recovered." This section represents the exclusive statutory remedy for attorney's fees under the LWPA.[4] "Attorney's fees are recoverable under the [LPWA] only if the claimant recovers the full amount of his timely and properly recorded or sworn claim by concursus or separate suit." *F.H. Paschen, S.N. Nielsen & Associates, LLC v. Se. Commercial Masonry, Inc.*, No. CIV.A. 12-2799, 2015 WL 7015389, at *5 (E.D. La. Nov. 12, 2015).

The LPWA nullifies any obligations beyond the requirements set forth in the LPWA. La. Rev. Stat. § 38:2241(C). Because the bond contemplated the LPWA, and the LPWA expressly limits attorney's fees to ten percent, the intent of the drafters could not have exceeded the limited remedies of § 38:2246. Returning to the text of the bond, "sums as may be justly due claimant" is ambiguous under Louisiana law and meaningfully varies from the limited remedy of costs for "labor and material" presented elsewhere in the bond. The limited attorney's fees provision of § 38:2246 plausibly fits within the ambiguous language in the bond. With no clear answer from the text of the contract or the contextual shadow cast by the LPWA, the Court holds that construing the limited attorney's fees provision of § 38:2246 to be included within "sums as may be justly due claimant" is proper given that vagaries or ambiguities in a contract must be construed against the drafter. La. Civ. Code art. 2056. Therefore, when Service Steel was required to file suit in

---

[4] Louisiana law may have allowed for the unbounded recovery of attorney's fees in an LPWA action prior to the 1991 enactment of La. Rev. Stat. § 38:2246. In *Town of Winnsboro*, Louisiana's Second Circuit Court of Appeals expressly held that the LPWA allowed for an award of attorney's fees to the town of Winnsboro despite the fact that the surety bond was a statutory bond within the scope of the LPWA. *Town of Winnsboro v. Barnard & Burk, Inc.*, 294 So. 2d 867, 886–88 (La. Ct. App. 1974).

12

pursuit of its claim, Service Steel became "justly due" attorney's fees equivalent to those provided for in the LPWA.[5]

The Court finds in contrast that the ambiguous language at issue in the bond cannot allow a remedy of interest. The LPWA does not provide for awards of interest. The interpretation for which Service Steel advocates would expand the bond obligations beyond the requirements of the LPWA. La. Rev. Stat. § 38:2241(C); *see also Pierce*, 14-669 at 6 ("The Public Works Act is to be strictly construed and the liability of the surety should not be expanded beyond the statute."). Therefore, Service Steel cannot recover on the bond the contractual interest it seeks.

### III.     CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Service Steel's Motion for Partial Summary Judgment, R. Doc. 27, is **GRANTED** insofar as Service Steel qualifies for attorney's fees within the limited scope of La. Rev. Stat. § 38:2246(A).

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment, R. Doc. 33, is **GRANTED IN PART AND DENIED IN PART**, and Service Steel's claim for contractual interest is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 11th day of January, 2016.

_____
UNITED STATES DISTRICT JUDGE

---

[5] Note that in order for Service Steel to qualify for the ten percent attorney's fees of § 38:2246, Service Steel must "recover[] the full amount of [Service Steel's] timely and properly recorded or sworn claim." An automatic recovery of ten percent attorney's fees would extend the scope of the LPWA, and any provision which extended the scope of the LPWA would be stricken from the bond.